Keith L. Hendricks (No. 012750)
**MOYES SELLERS & HENDRICKS**
1850 North Central Avenue, # 1100
Phoenix, Arizona 85004
Telephone: (602) 604-2141
khendricks@law-msh.com

Matthew D. Elster (No. 6303242)
**BEERMANN LLP**
161 North Clark Street #3000
Chicago, Illinois 60601
Telephone: (312) 621-9700
mdelster@beermannlaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:<br><br>HOME OPPORTUNITY, LLC,<br><br>Debtor.<br><br>ROBERT A. MACKENZIE, THE CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF DEBTOR HOME OPPORTUNITY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RED ROCK RIVER, LLC; WINDOW ROCK CAPITAL PARTNER, LLC; WINDOW ROCK RESIDENTIAL RECOVERY FUND CONSOLIDATOR, LLC; RED ROCK LANDING, LLC; WINDOW ROCK MANAGER, LLC; AND AMERICAN HOMES 4 RENT TRS, LLC.<br><br>Defendants. | Chapter 7<br><br>Case No.: 2:21-bk-09424-EPB<br><br>Adversary No.: 2-22-ap-00200-EPB<br><br>**OBJECTION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Chapter 7 Trustee, ROBERT A. MACKENZIE, through special counsel, BEERMANN LLP and MOYES SELLERS & HENDRICKS, objects to to Defendants' Window Rock Capital

Partners, LLC (WRCP), Window Rock Manager, LLC (WRM), Red Rock River, LLC (RRR), WRRRF Consolidator, LLC (WRRRF), and Red Rock Landing, LLC (RRL) (collectively **Defendants**) Motion to Dismiss at Adv. Dkt. No. 20. The objection is more fully set forth in and is supported by the following Memorandum of Points and Authorities in Opposition:

**MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION**

**I.    Introduction.**

Rather than starting with the merits, Defendants quixotically begin their attack on Trustee's First Amended Complaint (FAC) by attempting to minimize Debtor's complicity in Evoughn Ware's death (a fact already determined by a Cook County Illinois jury and affirmed on appeal) and trying to recast themselves and Debtor as victims. They are anything but.

Defendants engaged in an investment scheme designed to reap millions from financially disadvantaged individuals living in the substandard housing units they owned. Their quest for profit resulted in a woman's death. Putting aside Defendant's attempts to gain sympathy with this Court, Defendants' misguided efforts to overcomplicate Trustee's straight forward fraudulent conveyance action fall flat and their motion to dismiss should be denied for the reasons set forth below.

**II.    Legal Standards—Motion to Dismiss.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure permit a defendant to seek dismissal of a complaint which fails to state a claim for which relief can be granted. *In re Zavala*, 444 B.R. 181, 185 (Bankr. E.D. Cal. 2011). However, claims in federal court require just a short and plain statement showing the pleader is entitled to relief. *Id.* at 185. While it appears Defendants seeks to hold Trustee to the heightened particularity requirements of Federal Rule of Civil Procedure 9(b), that Rule is inapplicable to the

fraudulent transfer claims advanced here. *Castillo v. Johnson*, 2019 WL 4222289, at *7 (D. Ariz. Sept. 5, 2019). Even if this were not the case, Rule 9(b)'s requirements are to be relaxed where a bankruptcy trustee is the plaintiff particularly where "specific information is peculiarly within the adverse parties' knowledge" as is the case here. *In re Wolf*, 595 B.R. 735, 763 (Bankr. N.D. Ill. 2018), *aff'd,* 644 B.R. 725 (N.D. Ill. 2022).

As set forth in *Twombly* and *Iqbal*, cases cited in Defendants' memorandum,

> Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Twombly*, 550 U.S., at 555 [] but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *id*., at 570 []. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556 []. Two working principles underlie *Twombly*. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555 []. Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. *Id*., at 556 [].

*Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009)

Thus, to survive a motion to dismiss under Rule 12(b)(6), plaintiff need only provide enough facts establishing the claim is plausible on its face. *In re Lloyd*, 511 B.R. 657, 659 (Bankr. D. Ariz. 2014). Facial plausibility exists when facts are plead allowing a reasonable inference to be drawn by the court that defendant is liable for the misconduct alleged. *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016). "The Plaintiff is given the benefit of the doubt in reviewing such motions, and all allegations of material facts are taken as true and construed in the light most favorable to the nonmoving party." *Zavala*, 444 B.R. at 185. "The question 'is not whether plaintiff['s] claims will ultimately succeed on the[] merits, but whether the facts as pled are sufficient to warrant

discovery,' viewed in the light most favorable to the non-moving party." *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 552 (Bankr. D. Del. 2012). Dismissal of a complaint for failure to state a claim is improper unless it appears plaintiff can prove no set of facts entitling relief. *Zavala*, 444 B.R. at 186.

**III.  WRRRF's Dissolution is Not a Basis for Dismissal.**

Defendants first request dismissal of the FAC as to WRRRF claiming it is a dissolved entity and cannot be sued once a certificate of cancellation has been filed. In support of this contention, Defendants cite an opinion from the Chancery Court in Delaware which has no precedential value and is not determinative of whether WRRRF can be named as a defendant in an adversarial action in an Arizona Bankruptcy Court. In contrast, *In re Sw. Supermarkets, LLC*, 325 B.R. 417, 431 (Bankr. D. Ariz. 2005), is instructive and belies Defendants' position. There, defendant sought dismissal of a complaint against three dissolved Delaware companies, citing certificates of cancelation and arguing the dissolved companies ceased to exist and not be sued. This Court rejected that argument—the same one advanced here—explaining,

> If [defendant] is correct, the point is both moot and [defendant] lacks standing to argue it. If there is no entity there, then the Trustee's suit will gain him nothing but similarly cause harm to no one. But if there is no such entity, then who hired [the law firm] to seek its dismissal? If the limited partnerships did so, they must exist and have assets sufficient to pay their lawyers. But if they did not do so on their own behalf, then who did? It is difficult to see how the other [] defendants would have standing to move for their dismissal.
> *Id*.

Identical questions are presented here. If WRRRF does not exist, how did it hire counsel, accept service of Trustee's Complaint (Dkt. 14), file an appearance (Dkt. 17), and lodge the instant motion (Dkt. 20)? If WRRRF does not, in fact, exist, it necessarily could not do these

things and the remaining defendants lack standing to seek dismissal. This argument must be rejected.

**IV.  The Complaint Sets Forth a Cognizable Legal Theory.**

Defendants next argue there is no cognizable legal theory because "RRR made all of the subject transfers to the other Defendants from RRR's own bank account." They go on to quote disjointed paragraphs of the FAC, out of context, in a futile to distort the otherwise clear allegations therein. Defendants' attempted revisions of the FAC do not entitle them to relief.

Their assertions notwithstanding, Trustee has consistently maintained the transferred assets belonged to Debtor and no one else. Additionally, Defendants' argument further ignores the transfers identified in paragraph 31 of the FAC evincing transfers *directly from Debtor* to Defendants RRR and WRM, the source of which payments remains a mystery (Compl. at 31). For this reason alone, dismissal is not warranted.

As to the transfers from Alliance Bank of Arizona account ending in x2888 ("**Alliance x2888**"), in the FAC Trustee advances several avenues for avoidance relative to these fraudulent transfers.

In count I, Trustee sets forth an alter-ego theory asserting RRR and Debtor are the same entity such that Defendants should be treated as initial transferees (Compl. at ¶¶ 38-50). In counts II through IV, Trustee alleges that, while technically titled in RRR's name, Debtor actually owned and controlled the funds in Alliance x2888 such that all transfers therefrom were made by Debtor with its own assets and with Defendants being initial transferees. See Compl. at ¶ 28 (stating at all relevant times Alliance x2888 was "funded with Home Opportunity's assets."); see also Compl. at ¶¶ 54, 73, 83 (stating, *inter alia*, the transfers identified in paragraphs 29 and 31 were *made by the debtor* with funds that legally and equitably belonged to Home Opportunity).

Even accepting Defendants arguments, counts III and IV seek avoidance of the transfers against RRR as initial transferee and the remaining Defendants as subsequent transferees as permitted under AUFTA § 44-1008—a provision of AUFTA Defendants tellingly fail to cite in their recitation of the relevant law. Pursuant to AUFTA § 44-1008 Trustee is expressly allowed to seek judgment against "any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." Ariz. Rev. Stat. Ann. § 44-1008(B)(2). As alleged in the FAC, no Defendant qualifies as a good faith transferee (Compl. at ¶¶ 77-80, 84). Contrary to Defendants' assertions otherwise, none of Trustee's claims in counts II through IV are not predicated on an alter-ego theory but, instead, stand independently and are made in addition to and in conjunction with the alter-ego claim.

As to the alter-ego claim itself, Defendants disingenuously contend Trustee asks this "Court to treat the assets of a non-debtor (RRR) as co-extensive with the Debtor's assets." Defendants misstate Trustee's use of the alter-ego theory. As discussed *supra*, Trustee alleges Home Opportunity and RRR are the same entity and therefore liability is direct, allowing recovery of transfers to the Defendants as initial transfers—entirely permissible relief. See *In re Derivium Capital, LLC*, 396 B.R. 184, 191 (Bankr. D.S.C. 2008) (allowing purchaser of trustee's rights to allege alter-ego theory to recover transfers made to third parties by the alter-ego corporation as the initial transferee). Because RRR was Debtor's alter-ego, all transfers made from RRR's account as detailed in paragraph 29 of the FAC, were initial transfers subject to avoidance. *In re Hansen*, 341 B.R. 638, 643 (Bankr. N.D. Ill. 2006) (finding a debtor's alter-ego the initial transferee subject to avoidance); *Wolf*, 595 B.R. at 790 (treating entity and alter-ego the same such that if the entity is a subsequent transferee the alter-ego would also be treated as such).

Defendants' citation to *In re Wardle*, 2006 WL 6811026, at *1 (B.A.P. 9th Cir. Jan. 31, 2006), is both misplaced and inappropriate. To begin, the citation runs afoul of Federal Rules of Appellate Procedure precluding citation to unpublished judicial opinions issues prior to January 1, 2007. Fed. R. App. P. 32.1. Further, Judge Daniel P. Collins expressly declined to follow *Wardle* stating the decision was an unpublished opinion that was not binding. *In re Star Mountain Res.,* 2020 WL 6821721, at *5 (Bankr. D. Ariz. Sept. 30, 2020) (unpublished order). Finally, *Wardle* deals with Nevada not Delaware alter-ego law and seeks avoidance pursuant to United States Code as opposed to Arizona law claims as is the case here. *Wardle*, 2006 WL 6811026, at *6. Even if the case had any precedential value and could properly be cited, *Wardle* is distinguishable. As noted in the opinion and highlighted by Defendants, unlike the instant case, in *Wardle* there was no evidence the funds at issue ever belong to the debtors. *Id*. at 5. Here, however, Trustee's FAC specifically identifies the funds at issue as belonging to Debtor and not to RRR or the other Defendants (Compl. ¶¶ 28, 54, 73, 83).

Defendants also cite *In re Wheeler*, 444 B.R. 598 (Bankr. D. Idaho 2011) and *In re Howland*, 674 Fed. Appx. 482 (6th Cir. 2017), cases which are also not binding and distinguishable. *Wheeler* dealt with Idaho law relative to the alter-ego claims while *Howland* involved alter ego claims pursuant to Kentucky law—while the instant case implicates Delaware law. *Wheeler*, 444 B.R. at 607; *Howland*, 674 Fed. Appx. at 486. Additionally, both cases seek avoidance pursuant to United States Code—not AUFTA as is utilized here. *Wheeler*, 444 B.R. at 607-08; *Howland*, 674 Fed. Appx. at 485. Moreover, in both cases, the assets at issue were not alleged to have belonged to the debtor as they do here. *Id*.

Trustee here does not seek to transmogrify assets of a non-debtor or treat them as co-extensive with debtor's assets as was the case in both *Wardle, Wheeler* and *Howland*. Trustee

does not seek to create assets for Debtor. Instead, Trustee asks that liability attach to RRR for using Debtor as an instrumentality in the conduct of its own business as Defendants' own authorities permit. See *Howland*, 674 Fed. Appx. at 486. In doing so, Trustee seeks only to have Debtor and RRR treated as the same entity such that the transfers of Debtor's property from Alliance x2888 to Defendants constitute initial transfers.

**V.     The Complaint Satisfies Minimum Pleading Standards.**

   ***a. Trustee has pled sufficient facts to create a reasonable inference of alter-ego.***

Defendants next claim Trustee failed to meet the pleading standard for his alter-ego theory by mischaracterizing and misstating the actual allegations in the FAC. Trustee has pled sufficient facts to create a reasonable inference RRR is the alter-ego of Debtor under Delaware law. To prevail on an alter-ego claim under Delaware law, like Arizona law, the trustee must show RRR and Debtor "operated as a single economic entity that resulted in an overall element of injustice or unfairness." *In re Opus E., LLC*, 528 B.R. 30, 57 (Bankr. D. Del. 2015), *aff'd sub nom. In re: Opus E., LLC*, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd sub nom. In re Opus E. LLC*, 698 Fed. Appx. 711 (3d Cir. 2017); *In re Skyline Ridge, LLC*, 2020 WL 3089257, at *13 (Bankr. D. Ariz. June 10, 2020).

Thus, there are two elements of an alter-ego claim—(1) operation as a single entity and (2) an overall element of injustice or unfairness. *Id*. As to the latter, Defendants argue "[t]here are no allegations that support an inference that the Debtor was a 'sham' or existed for 'no other purpose than as a vehicle for fraud." However, this is not the standard. Instead, "the requisite injustice or unfairness is not that the parent corporation committed an actual fraud or sham but just something that is similar in nature to fraud or a sham." (Internal quotation marks omitted.) *Autobacs Strauss, Inc.*, 473 B.R. at 556.

In its FAC, Trustee outlined Debtors's role in an investment scheme involving millions of dollars in which Debtor owned various dilapidated apartments operated under the control of RRR and various other entities named here as defendants. (Compl. at ¶¶ 18-20). Trustee alleged that almost immediately after Evoughn Ware's horrific death in a home which Debtor failed to adequately maintain, RRR acting in concert with Debtor, began liquidating Debtor's assets including selling off at least 2,450 properties and redirecting Debtor's income into a bank account titled in RRR's name to frustrate Ware's estate in the event it prevailed against Debtor (Compl. at ¶¶ 13, 22, 24-26, 28). As intended by RRR, Debtor, and Defendants, by the time the Illinois Appellate Court affirmed the jury's $9.6 million dollar judgment in February 2021, Home Debtor's assets were depleted—RRR and Defendants having siphoned these assets and distributed the proceeds to various insider entities within Defendants' family of entities (Compl. at ¶¶ 15-17, 24-32). It is inconceivable Defendants would attempt to characterize these brazen actions as anything other than a fraud or sham. Nor should this Court draw such an inference at the pleading stage. The unfairness of allowing an enterprise designed to capitalize on the economically disadvantaged whose greed resulted in a woman's death to evade financial responsibility for its conduct cannot be ignored.

As to the first element—operation as a single entity—Trustee is only required to establish a reasonable inference RRR and Debtor operated as a single economic unit, a fact evidenced by the following factors:

> (a) the subsidiary is undercapitalized; (b) the subsidiary was insolvent at the relevant time; (c) the companies failed to observe corporate formalities; (d) the subsidiary did not pay dividends to the parent; (e) there was a siphoning of the subsidiary's funds by the dominant stockholder; (f) the absence of corporate records; and (g) whether the corporation is merely a façade for the operations of the dominant stockholder or stockholders.
> *Autobacs Strauss, Inc.*, 473 B.R. at 556.

Here, all that is required is some combination of these non-exhaustive factors—with no single factor being dispositive. *Id*. Nevertheless, undercapitalization and insolvency are the most relevant factors in determining whether the corporation was established to defraud its creditors. *Id*. at 552. "A debtor has unreasonably small capital if it cannot 'generate enough cash flow to sustain operations' at the time of the transfer or obligation" using the reasonable foreseeability standard. *Id*.

As established in the FAC, Debtor, intentionally became undercapitalized by selling all its assets and redirecting its proceeds into a bank account titled in RRR's name such that Debtor would appear insolvent when the Ware Estate and its other creditors attempted to collect (Compl. at ¶¶ 18-33, 40-44, 47-48). As pled in the FAC, there is no evidence Debtor served as anything other than a façade. Debtor and RRR operated out of the same location and were dissolved on the same date. Debtor did not even have a bank account after September 1, 2017 when the Ware Estate named it as a defendant in the wrongful death action. It never filed a tax return, RRR's return consisted entirely of Debtor's financial information, and the companies shared employees and financial records making the two entities indistinguishable (Compl. at ¶¶ 40-48).

Defendants do not deny that (i) Debtor was a pass-through entity for tax purposes; (ii) RRR and Debtor shared addresses and a bank account; and (iii) the companies co-signed for a loan and, while ignoring other factual allegations pled by Trustee as to this element, claim its cherry-picked facts are not enough. Defendants incompletely cite *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001), to give the illusion that Trustee's allegations are insufficient to establish the first element of an alter-ego claim. However, when read in context, the opposite is true so long as the second element of alter-ego is also pled, as it is here. *Id*. Trustee

has no obligation to conclusively establish alter-ego at the pleading stage—only that the claim is plausible which Trustee has done. *Lloyd*, 511 B.R. at 659.

### b. *Trustee has pled sufficient facts to create a reasonable inference of fraudulent transfers.*

Defendants further claim the FAC fails to plead any connection between Debtor's assets and the alleged fraudulent transfers. This is demonstrably false. As set forth in the FAC, RRR owned and managed Debtor (Compl. at ¶ 20). In connection with its efforts to evade creditors, following initiation of the Ware lawsuit, Debtor began liquidating its assets (Compl. at ¶¶ 22, 26). By July 30, 2018, Debtor had liquidated its only known bank account and diverted its assets to RRR's Alliance x2888 account (Compl. at ¶ 25, 28, 59). RRR continued the liquidation efforts and by January 16, 2020, Alliance x2888 was also empty, with the funds having been transferred to Defendants (Compl. at ¶¶ 29-30).

Based on these facts, Trustee plausibly alleged the assets in Alliance x2888 belonged to Debtor. *Lloyd*, 511 B.R. at 659; *Autobacs Strauss, Inc.*, 473 B.R. at 552. This is particularly true where the information to establish this claim is peculiarly in Debtor's possession and Defendants. Dismissal is not proper where, as here, full discovery has not been completed nor even commenced in this adversarial action, as a factual record has yet to be established. *Id.*

### VI. Trustee Has Sufficiently Pled Insolvency and Provided Fair Notice of the Transfers Sought to be Avoided in Count IV of its Complaint.

Defendants also argue the FAC fails to allege facts regarding Debtor's insolvency under AUFTA §44-1005. Once again, the FAC itself belies this argument. Trustee clearly alleges the transfers at issue comprised substantially all RRR's and Debtor's assets, resulting in their insolvency. Again, at this pleading stage, a plaintiff need only provide enough facts to create

facial plausibility that RRR and Debtor are liable for the misconduct thereby warranting discovery. *O'Brien*, 818 F.3d at 933; *Autobacs Strauss, Inc.*, 473 B.R. at 552. It has done so here.

The FAC establishes that a $9.6 million judgment was entered against Debtor in favor of Ware on January 22, 2020 (Compl. at ¶ 15). Immediately after the wrongful death filing in 2017 through 2020 both Debtor and RRR commenced a liquidation of their assets. Specifically, Debtor exhausted its bank account and directed all its assets into Alliance x2888 titled in RRR's name (Compl. at ¶¶ 21-22). Distributions to insiders from that account were identified in the FAC from September 5, 2018 until the account had a zero balance as of January 16, 2020 (Compl. at ¶ 29). By December 31, 2019, both RRR (whose assets totaled $28 million in 2017) and Debtor were dissolved and filed certificates of cancellation with the Delaware Secretary of State. (Compl. at ¶¶ 20, 27). Home Opportunity and RRR were terminated as of December 31, 2019 (Compl. at ¶ 22). Given this data, there is facial plausibility exists of both insolvency and lack of reasonably equivalent value relative to the transactions warranting further discovery. *O'Brien*, 818 F.3d at 933; *Autobacs Strauss, Inc.*, 473 B.R. at 552.

Defendants further complain they were not provided "fair notice of exactly which transfers are alleged to be constructively fraudulent." This complaint is without merit. In fact, even where no transfers are identified involving a specific defendant dismissal is not warranted where, as is the case here, the FAC indicates the list of transfers contains only those transfers discovered to date with further discovery remaining outstanding. *In re Don's Making Money, LLP*, 2007 WL 2784351, at *5 (Bankr. D. Ariz. Sept. 24, 2007). In any event, Defendants have been more than sufficiently notified of their alleged role in the transfers where the FAC lists the date, amount, and transfer specific to each Defendant (Compl. at ¶¶ 29, 70). *Castillo*, 2019 WL 4222289, at *8. To this end, count IV of the FAC incorporates all prior allegations into the claim including a list

of 132 transfers to insiders totaling $3,452,791.46 all made by Debtor for purposes of defrauding its creditors. (Compl. at ¶ 70, 81).

### VII. Counts II Through IV of Trustee's Complaint Sufficiently State Claims Against RRR.

In their penultimate argument, Defendants regurgitate their prior meritless complaints relative to RRR's role in the fraudulent transactions at issue. Defendants feign confusion; however, Trustee's FAC provides clear claims relative to RRR in the alternative as is expressly permitted pursuant to Federal Rule of Civil Procedure 8(d)(2). See Fed. R. Civ. P. 8(d)(2) (stating "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count *** or in separate ones" and where "a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

As discussed above, in addition to his alter-ego and other theories of liability against RRR and Defendants, Trustee alleges Debtor made 132 transfers totaling $3,394,613.44 to RRR such that RRR would have liability as an initial transferee (Compl. at ¶¶ 29, 54, 70(a), 73, 83). These transfers are in addition to the payments made by Debtor to RRR disclosed on Debtor's Form 202 Declaration for which avoidance is sought—a point completely disregarded in Defendants' memorandum, a fact which further precludes dismissal of the claims against RRR (Compl. at ¶ 31). As such, Trustee has pled sufficient facts to create a reasonable inference the transfers made by Home Opportunity to RRR are subject to avoidance pursuant to AUFTA §§ 44-1004 and 44-1005 such that dismissal relative to RRR is inappropriate.

### VIII. This Court Has Jurisdiction over Defendants and this Matter.

Finally, Defendants state they do not consent to this Court's jurisdiction or its entry of a final order; but fail to provide citation to any authority for these points. Contrary to their unsupported arguments, this Court plainly possesses jurisdiction here. Trustee's claims arise out

of Debtor's Title 11 bankruptcy filing, which vests District Courts with original and exclusive jurisdiction. 28 U.S. C. § 1334(a). See also 28 U.S.C. §151 (clarifying that bankruptcy judges "shall constitute a unit of the district court."). Bankruptcy judges may hear and enter final orders on all 'core proceedings' and may submit proposed findings of fact and conclusions of law to the district court for entry of final order for all 'non-core proceedings. 28 U.S.C. § 157. Section 544(b)(1) of the Code expressly confers a bankruptcy trustee with powers of avoidance including fraudulent conveyance actions rooted in state law. 11 USCA § 544. Bankruptcy courts are vested with the power to hear such fraudulent conveyance cases and to submit reports and recommendations to the district court including proposed findings of fact and conclusion with only the power to enter final judgment abrogated. *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 565-66 (9th Cir. 2012), *aff'd sub nom. Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). Accordingly, this Court has jurisdiction to hear Trustee's fraudulent conveyance claims and even to enter final judgment where there is consent either actual or implied by failing to timely object or other such actions. *Id*. at 567-68.

**IX. Conclusion.**

For the reasons set forth above, Defendants' Motion seeking dismissal of Trustee's FAC must be denied. In the alternative, should Defendants' Motion be granted, Trustee should be granted leave to file an amended complaint. *In re Checker Motors Corp.*, 463 B.R. 858, 868 (Bankr. W.D. Mich. 2012).

DATED this <u>6th </u>day of January, 2023.

Respectfully submitted,
**MOYES SELLERS & HENDRICKS**
**BEERMANN LLP**

<u>/s/ *Matthew D. Elster*</u>
Special Counsel to the Trustee

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January, 2023, a copy of the attached document was filed via the court's CM/ECF system, which will send electronic notice to all counsel of record who have appeared in this case.

/s/ *Katie Abbitt*