| Keith L. Hendricks (No. 012750) | Matthew D. Elster (No. 6303242) |
| --- | --- |
| **MOYES SELLERS & HENDRICKS** | **BEERMANN LLP** |
| 1850 North Central Avenue, # 1100 | 161 North Clark Street #3000 |
| Phoenix, Arizona 85004 | Chicago, Illinois 60601 |
| Telephone: (602) 604-2141 | Telephone: (312) 621-9700 |
| khendricks@law-msh.com | mdelster@beermannlaw.com |

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
| --- | --- |
| IN RE: | Chapter 7 |
| HOME OPPORTUNITY, LLC, | Case No.: 2:21-bk-09424-EPB |
| Debtor. | Adversary No.: 2-22-ap-00200-EPB |
| | **OBJECTION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| ROBERT A. MACKENZIE, THE CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF DEBTOR HOME OPPORTUNITY, LLC, | |
| Plaintiff, | |
| v. | |
| RED ROCK RIVER, LLC; WINDOW ROCK CAPITAL PARTNER, LLC; WINDOW ROCK RESIDENTIAL RECOVERY FUND CONSOLIDATOR, LLC; RED ROCK LANDING, LLC; WINDOW ROCK MANAGER, LLC; AND AMERICAN HOMES 4 RENT TRS, LLC. | |
| Defendants. | |

Chapter 7 Trustee, ROBERT A. MACKENZIE (**Trustee**), through special counsel, BEERMANN LLP and MOYES SELLERS & HENDRICKS, objects to the motion to dismiss

filed at Adv. Dkt. No. 21 and submits the following Memorandum of Points and Authorities in opposition to Defendant American Homes 4 Rent TRS, LLC's (**AH4R**) Motion to Dismiss:

**MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION**

**I.     Introduction.**

In its memorandum seeking dismissal of Trustee's First Amended Complaint (**FAC**), AH4R cherry-picks and misstates the factual allegations in the FAC, as well as the law, in an effort to absolve itself of liability for its receipt of funds fraudulently transferred by Home Opportunity (or "**Debtor**") to prevent its creditors ( the largest of which is the Estate of Evoughn Ware) from collecting what is owed to them. For the reasons set forth below, AH4R's Motion to Dismiss should be denied.

**II.    Legal Standards—Motion to Dismiss.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure permit a defendant to seek dismissal of a complaint which fails to state a claim for which relief can be granted. *In re Zavala*, 444 B.R. 181, 185 (Bankr. E.D. Cal. 2011). However, claims in federal court require just a short and plain statement showing the pleader is entitled to relief. *Id.* at 185. Thus, to survive a motion to dismiss under Rule 12(b)(6), plaintiff need only provide enough facts establishing the claim is plausible on its face. *In re Lloyd*, 511 B.R. 657, 659 (Bankr. D. Ariz. 2014). Facial plausibility exists when facts are plead allowing a reasonable inference to be drawn by the court that defendant is liable for the misconduct alleged. *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016).

"The Plaintiff is given the benefit of the doubt in reviewing such motions, and all allegations of material facts are taken as true and construed in the light most favorable to the

nonmoving party." *Zavala*, 444 B.R. at 185. "The question 'is not whether plaintiff['s] claims will ultimately succeed on the[] merits, but whether the facts as pled are sufficient to warrant discovery,' viewed in the light most favorable to the non-moving party." *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 552 (Bankr. D. Del. 2012). Dismissal of a complaint for failure to state a claim is improper unless it appears plaintiff can prove no set of facts entitling relief. *Id.* at 186.

**III.     RRR is Home Opportunity's Alter-Ego (Count I).**

AH4R argues Trustee (a) has not sufficiently plead his alter-ego claim and (b) the theory does not entitle Trustee to the retroactive transfer of assets between two separate entities. As to the former, AH4R is simply incorrect. As to the latter, AH4R misstates the relief sought by Trustee and, regardless, RRR and Home Opportunity are not separate entities.

> ***a.   Trustee Has Pled Sufficient Facts to Create a Reasonable Inference RRR is Debtor's Alter-Ego.***

Trustee has pled sufficient facts to create a reasonable inference that RRR is the alter-ego of Home Opportunity under Delaware law. To prevail on an alter-ego claim under Delaware law, like Arizona law, the trustee must show RRR and Home Opportunity "operated as a single economic entity that resulted in an overall element of injustice or unfairness." *In re Opus E., LLC*, 528 B.R. 30, 57 (Bankr. D. Del. 2015), *aff'd sub nom. In re: Opus E., LLC*, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd sub nom. In re Opus E. LLC*, 698 Fed. Appx. 711 (3d Cir. 2017); *In re Skyline Ridge, LLC*, 2020 WL 3089257, at *13 (Bankr. D. Ariz. June 10, 2020).

AH4R argues Trustee has not alleged "factual allegations that support an inference that Debtor was created by RRR as a sham entity for purposes of defrauding investors and creditors[,]" however, this is not the applicable standard. Instead, "the requisite injustice or unfairness is not that the parent corporation committed an actual fraud or sham but just something that is similar

in nature to fraud or a sham." (Internal quotation marks omitted.) *Autobacs Strauss, Inc.*, 473 B.R. at 556.

In its FAC, Trustee outlined Debtor's role in an investment scheme involving millions of dollars in which it owned various dilapidated apartments operated under the control of RRR and various other entities named here as defendants. (Compl. at ¶¶ 18-20). Trustee alleged that almost immediately after Evoughn Ware's horrific death in one of Debtor's neglected properties, RRR in concert with Debtor, began liquidating its assets including at least 2,450 properties and diverted its remaining income to a bank account titled in RRR's name to ensure Ware's estate could not be compensated for Ware's death(Compl. at ¶¶ 13, 22, 24-26, 28). As intended by RRR, Debtor, and the other named defendants, by the time the Illinois appellate court affirmed the Ware estate's $9.6 million dollar judgment in February 2021, Debtor had successfully depleted its assets—RRR and other intertwined entities having siphoned these assets (Compl. at ¶¶ 15-17, 24-32). It is inconceivable that AH4R would attempt to characterize Home Opportunity and RRR's brazen actions as something dissimilar in nature to fraud or a sham. The injustice of allowing an enterprise designed to capitalize on the economically disadvantaged whose greed resulted in a woman's death to evade financial responsibility for its conduct cannot be ignored.

In any event, AH4R conflates the two elements of an alter-ego claim—(1) operation as a single entity and (2) an overall element of injustice or unfairness. As to the former, Trustee is only required to establish a reasonable inference RRR and Home Opportunity were a single economic unit as evidenced by the following factors:

> (a) the subsidiary is undercapitalized; (b) the subsidiary was insolvent at the relevant time; (c) the companies failed to observe corporate formalities; (d) the subsidiary did not pay dividends to the parent; (e) there was a siphoning of the subsidiary's funds by the dominant stockholder; (f) the absence of corporate records; and (g)

> whether the corporation is merely a façade for the operations of the dominant stockholder or stockholders.
> *Autobacs Strauss, Inc.*, 473 B.R. at 556.

Here, Trustee must allege some combination of these non-exhaustive factors—with no single factor being dispositive. *Id*. Nevertheless, undercapitalization and insolvency are the most relevant factors in determining whether the corporation was established to defraud its creditors, factors which are indisputably present here. *Id*. at 552. "A debtor has unreasonably small capital if it cannot 'generate enough cash flow to sustain operations' at the time of the transfer or obligation" using the reasonable foreseeability standard. *Id*.

As established in the FAC, Debtor intentionally undercapitalized itself by liquidating all its assets and redirecting 100% of its revenue into a bank account titled in RRR's name so Debtor would appear insolvent when the Ware estate and other creditors attempted to collect from it (Compl. at ¶¶ 18-33, 40-44, 47-48). As plead in the FAC, after the commencement of Ware's suit, Debtor was nothing other than a façade for RRR. Debtor and RRR operated out of the same location, were dissolved on the same date, and utilized the same bank account. RRR reported Debtor's income, exercised control over Debtor's assets, and both RRR and Debtor's controlling entities treated Debtor and RRR as virtually indistinguishable (Compl. at ¶¶ 40-48).

AH4R does not deny RRR was Debtor's sole member, the two entities operated out of the same address, and RRR's tax filings included Debtor's data. Instead, with no citation to authority, AH4R cherry-picks the aforementioned allegations—ignoring others set forth above and in the FAC—and then concludes this is not enough to establish alter-ego. However, Trustee has no obligation to establish alter-ego at the pleading stage—only that the claim is plausible which Trustee has done. *Lloyd*, 511 B.R. at 659.

### b. *Trustee Properly Asserted the Alter-Ego Doctrine.*

AH4R further misconstrues Trustee's alter-ego theory. First, AH4R states Trustee does not seek to hold RRR liable for the claims against Debtor. AH4R is incorrect. Rather, the instant alter-ego theory is advanced by Trustee in addition to liability sought against RRR on other bases. (Compl. at ¶ 70(a)). Furthermore, Trustee never suggests the transfers sought to be avoided involved RRR's own property—quite the opposite. Trustee expressly alleged that while titled in RRR's name, all the funds transferred into the Alliance Bank of Arizona account ending in x2888 ("**Alliance x2888**") belonged to Debtor (Compl. at ¶ 28).

Contrary to AH4R's allegations, Trustee asserts his alter-ego theory—in addition to seeking other relief from RRR—asserting Debtor and RRR are the same entity and therefore liability is direct allowing recovery of transfers to the named defendants as an initial transfers. *In re Derivium Capital, LLC*, 396 B.R. 184, 191 (Bankr. D.S.C. 2008) (allowing purchaser of trustee's rights to allege alter-ego theory to recover transfers made to third parties by the alter-ego corporation as the initial transferee). Because RRR was Debtor's alter-ego, all transfers made by RRR as detailed in paragraph 29 of the Complaint, were initial transfers subject to avoidance. *In re Hansen*, 341 B.R. 638, 643 (Bankr. N.D. Ill. 2006) (finding a debtor's alter-ego the initial transferee subject to avoidance); *In re Wolf*, 595 B.R. 735, 790 (Bankr. N.D. Ill. 2018), *aff'd,* 644 B.R. 725 (N.D. Ill. 2022) (treating entity and alter-ego the same such that if the entity is a subsequent transferee the alter-ego would also be treated as such).

**IV. Trustee Has Sufficiently Plead Avoidance of Fraudulent Transfers Pursuant to AUFTA §44-1004(A)(1)-(2) and §44-1005 (Counts II, III, and IV).**

Trustee has sufficiently pled facts creating a reasonable inference of fraudulent transfers pursuant to sections 44-1004(A)(1)-(2) and 44-1005 of the Arizona Uniform Fraudulent Transfer Act (**AUFTA**). Contrary to AH4R's contrary assertion, the claims against AH4R are ripe because (a) those claims exist independent of any finding RRR is Debtor's alter-ego; (b) the transfers were

made by Debtor; and (c) the transferred property belonged to Debtor itself where the funds in Alliance x2888 were owned and controlled by Debtor and directly attributable to the sale of Debtor's assets.

### a. *Trustee's Fraudulent Transfer Claims Against AH4R Are Ripe.*

Again, AH4R misstates Trustee's Complaint stating "Trustee admits that its fraudulent transfer claims are dependent on RRR being the alter ego of the Debtor[.]" This is simply not factual, as Trustee has never asserted that its fraudulent transfer arguments are contingent on a finding RRR was Debtor's alter-ego. The fraudulent transfer arguments are not contingent on an alter ego finding. Nor has Trustee admitted the transfers sought to be avoided consist of RRR's property—Trustee has always maintained the property belonged to Debtor.

As set forth in the Complaint, Trustee advances his alter-ego theory maintain in Count I of the Complaint asserting that RRR was Home Opportunity's alter-ego such that all transfers made by RRR to the named defendants including AH4R as detailed in paragraph 29 of the Complaint were initial transfers subject to avoidance under §§ 44-1004(A)(1), 44-1004(A)(2), and 44-1005 of AUFTA.

### b. *The Transfers at Issue Were Made by the Debtor.*

Irrespective of the alter-ego claim, while technically titled in RRR's name, the Alliance x2888 bank account was funded exclusively with Debtor's assets (Compl. at ¶ 28). Thus, in Counts II, III, and IV Trustee seeks avoidance of the transfers made by Debtor as to all the named defendants as initial transferees pursuant to AUFTA §§ 44-1004(A)(1), 44-1004(A)(2), and 44-1005.

Additionally, Counts III and IV also seeks avoidance of the transfers against RRR as initial transferee and AH4R and other named defendants as subsequent transferees pursuant to AUFTA

§§ 44-1004(A)(2), and 44-1005 as permissible under § 44-1008. AUFTA § 44-1008 contemplates liability for subsequent transferees like AH4R expressly allowing a judgment against "any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." Ariz. Rev. Stat. Ann. § 44-1008(B)(2). Accordingly, the FAC alleges Trustee is entitled to avoidance and recovery of transfers to the named defendant including AH4R as both an initial *and* subsequent transferee under AUFTA §§ 44-1004(A)(2), and 44-1005. Ariz. Rev. Stat. Ann. § 44-1008.

The cases cited by AH4R suggesting Arizona and the Ninth Circuit have declined to find fraudulent transfer liability for transfers made by a third party are inapposite, and, in any event, not controlling on this Court.

*SPQR Venture, Inc. v. Robertson*, 237 Ariz. 270 (Ct. App. 2015) involved creditors' garnishment proceeding against debtor's husband relating to wife/debtor's premarital debt and a claim husband engaged in behavior that violated AUFTA. *Id*. at 271. Unlike this case, *SPQ*R did not involve transfers to a third party by a debtor—instead, a creditor proceeded on a theory that husband's income constituted community property liable for premarital debts of a spouse under Arizona matrimonial law, thereby subjecting that property to AUFTA. *Id*. at 272-73. The Arizona Court of Appeals disagreed interpreting Arizona's domestic relations statute to shield husband's income against liability for his wife's premarital debt and AUFTA. *Id*.

*MidFirst Bank v. Barness*, 2014 WL 6456046 (Ariz. Ct. App. Nov. 18, 2014), an unpublished decision without precedential value, dealt with married parties' joint debt and the proceeds of a life insurance policy on husband/debtor's life distributed to wife/debtor's sister which creditors claimed debtor placed in trust in violation of AUFTA § 44-1004(A)(1) and which were subject to garnishment. *Id*. at *2. Like *SPQR*, *MidFirst* involved no transfers by debtor to a

third party—instead, the case turned on the court's interpretation of an Arizona statute exempting the life insurance proceeds at issue from creditors. *Id*. at *3-4.

*Ford-Torres v. Cascade Valley Telecom, Inc.*, 374 Fed. Appx. 698, 700 (9th Cir. 2010), arose under Oregon's UFTA and the decision provides no explanation for the Court's disposition. *Id*. Similarly, *Coan v. Geddes*, 2013 WL 870242 (Conn. Super. Ct. Jan. 30, 2013), is not instructive as it involved Connecticut's UFTA which contains entirely different provisions from the AUFTA. *MOH Mgmt., LLC v. Michelangelo Leasing, Inc.*, 437 P.3d 1054 (2019), is an unpublished—and therefore non-precedential—decision which AH4R improperly cites pursuant to Nevada Rules of Appellate Procedure 36(c)(3) (Nev. R. App. P. 36 (eff. March 1, 2019)). Moreover, *MOH* involved Nevada's UFTA and a debtor's good faith transfer of assets to trustee who then transferred the assets to defendant in an assignment for the benefit of creditors made by the trustee in connection with its Chapter 13 Bankruptcy proceedings. *Id*. at *1. Finally, *Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79 (3d Cir. 2018), involved Delaware's UFTA but notably indicates an alter-ego theory *would* permit recovery. *Id*. at *86. It is of no help to AH4R here.

### c. The Transfers At Issue Involved Debtor's Property.

AH4R again misstates Trustee's allegations, suggesting the assets in Alliance x2888 were RRR's assets and property. While Trustee acknowledges Alliance account x2888 was *titled* in RRR's name, the account—including the $1,085,854.92 balance as of July 30, 2018—held "Home Opportunity's assets." (Compl. at ¶ 28). Without citation to authority AH4R states the "owner of an account is the presumptive owner of the funds in the account." However, as pointed out in *In re Rose*, 574 B.R. 141, 150 (D. Ariz. 2017), *aff'd sub nom. Rose v. Reaves*, 754 Fed. Appx. 572 (9th Cir. 2019), a debtor's placement of funds into an account titled in the name of a

third-party is not dispositive of ownership—instead, what matters is whether debtor had control of those assets. Here, Trustee alleged that the Debtor retained control of the assets placed in Alliance x2888 as the funds therein belonged to Debtor and all transfers were made at Debtor's direction. (Compl. at ¶¶ 54, 73, 83). Accordingly, all transfers identified in Trustee's Complaint consist of Debtor's property.

**V.  The Transfers Were Made with Intent to Hinder, Delay, or Defraud Debtor's Creditors Pursuant to AUFSA § 44-1004(A)(1) (Count II).**

Trustee has pled sufficient facts to create a reasonable inference the transfers at issue were made with the intent to hinder, delay, or defraud Debtor's creditors pursuant to AUFTA § 44-1004(A)(1). Subsection (B) of § 44-1004 "provides a non-exclusive list of factors" to be considered in determining the existence of actual intent. *Gerow v. Covill*, 192 Ariz. 9, 17 (Ct. App. 1998), *as amended (Aug. 26, 1998)*. These "badges of fraud" *** "are merely signs or marks from which intent may be inferred and are not required elements." (Internal quotation marks omitted). *Id*. As explained in *Gerow*, the eleven badges,

> are facts having a tendency to show the existence of fraud, although
> their value as evidence is relative and not absolute ... Often a single
> one of them may establish and stamp a transaction as fraudulent.
> When, however, several are found in the same transaction, strong,
> clear evidence will be required to repel the conclusion of fraudulent
> intent." (Citations) (recognizing that one or two badges of fraud may
> be sufficient to prove fraudulent conveyance).
> *Id*.

Notably, AH4R concedes three of the alleged badges of fraud, specifically that before the transfers were made, Debtor had been sued or threatened with suit (AUFTA 44-1004(B)(4)); Debtor was insolvent or became insolvent shortly after the transfer (AUFTA 44-1004(B)(9)); and, the transfer occurred shortly before or shortly after a substantial debt was incurred (AUFTA 44-

1004(B)(10)).[1] For this reason alone, Trustee has placed sufficient facts before this Court to create a reasonable inference the transfers were made with the intent to hinder, delay, or defraud Debtor's creditors. Nevertheless, AH4R contends Count II should be dismissed because (a) AH4R is not an insider; (b) Debtor did not conceal assets; and (c) the transfers did not cause RRR's insolvency. Here too, AH4R cherry-picks allegations in the Complaint to create a strawman which it disingenuously knocks down.

### *a. AH4R is an Insider.*

AH4R is an insider pursuant to AUFSA §44-1004(B)(1). AH4R claims it is not an insider because AH4R is not a director, officer, partner, or entity in control of the debtor. However, as alleged in the Complaint, Debtor was solely owned and managed by RRR, and AH4R owned a majority interest in RRR (Compl. at ¶¶ 7, 12, 56).

Acknowledging the absence of a definition of "insider" in AUFSA, AH4R relies upon the Bankruptcy Code's definition to suggest it is not an insider. In doing so, AH4R ignores authority explaining that the Code's "definition [of "insider"] is intended to be illustrative rather than exhaustive." *Matter of Krehl*, 86 F.3d 737, 741 (7th Cir. 1996). While Trustee would argue this relationship falls squarely in the Bankruptcy Code's definition of an insider where AH4R owned over 62% of RRR at all relevant times, and where RRR was Debtor's sole member and alter-ego, there can be no question AH4R is an insider as defined by Black's Law Dictionary which defines that term as "[a]n entity or person who is so closely related to the debtor that any deal between

---

[1] In paragraph D(3) of its Memorandum AH4R lumps factor 10 with arguments relative to factor 5 ¶ D(3); however, AH4R fails to address this factor at all.

them will not be considered an arm's length transaction and will be subject to close scrutiny." *Insider*, Black's Law Dictionary (11th ed. 2019).

### b. The Concealment Involves the Transfers in Question.

AH4R's unsupported assertions notwithstanding, Debtor concealed assets within the meaning of AUFSA §44-1004(B)(7). Yet again, AH4R misstates the allegations made by Trustee in its Complaint. Immediately following the filing of Ware's wrongful death suit in 2017, Debtor began liquidating assets, including real property, and closed the one bank about in its name (Compl. at ¶¶ 21, 26). From 2017 through 2019, these property sales generated in excess of $18 million dollars (Compl. at ¶ 26). Not only were many of these sales unrecorded, these proceeds and others, totaling tens of millions of dollars, were secreted away and, at least in part, placed in an account titled in RRR's name (Compl. at ¶ 21). A debtor's directing its assets into an account not titled in the debtor's name as occurred here definitionally constitutes concealment under the AUFTA § 44-1004(B)(7). *Carey v. Soucy*, 245 Ariz. 547, 552 (Ct. App. 2018). These concealed assets are the subject of the transfers sought to be avoided.

### c. The Transfers Were Substantially All of Debtor's Assets and Occurred Shortly Before or After Substantial Debt was Incurred.

AH4R suggests the Complaint does not allege facts regarding RRR's insolvency and claims without citation that "Trustee must allege the total amount of assets and liabilities for both the Debtor and RRR separately as to the date of each transfer." AH4R also claims RRR was not responsible for Debtor's debts under Delaware law. With respect to the latter, and as explained above, RRR is the Debtor under an alter-ego theory. In any event, the transfers at issue were of substantially all RRR's and Debtor's assets shortly before and after the debt was incurred.

As to the former, at this pleading stage, a plaintiff need only provide enough facts to create facial plausibility that RRR and Debtor are liable for the misconduct. *O'Brien*, 818 F.3d at 933;

*Autobacs Strauss, Inc.*, 473 B.R. at 552. The FAC establishes that a $9.6 million judgment was entered against Debtor in favor of the Ware estate on January 22, 2020 (Compl. at ¶ 15). Immediately after the commencement of the Illinois tort action through 2020 both Debtor and RRR commenced a liquidation of their assets. Specifically, Debtor exhausted its bank account and directed all its assets into Alliance x2888 titled in RRR's name (Compl. at ¶¶ 21-22). Distributions to insiders from that account were identified in the FAC from September 5, 2018 until the account had a zero balance as of January 16, 2020 (Compl. at ¶ 29). By December 31, 2019, both RRR (who had assets totaling $28 million in 2017) and Debtor were dissolved and had filed certificates of cancellation with the Delaware Secretary of State. (Compl. at ¶¶ 20, 27).

Accordingly, the Complaint sufficiently sets forth facts creating a reasonable inference the transfers were made with the intent to hinder, delay, or defraud Debtor's creditors pursuant to AUFSA § 44-1004(A)(1).

## VI. Counts III and IV Sufficiently Set Forth Facts Creating a Reasonable Inference Avoidance is Required Pursuant to AUFTA § 44-1004(A)(2).

Trustee has pled sufficient facts to create a reasonable inference of constructive fraud pursuant to AUFTA § 44-1004(A)(2). While AH4R seeks to hold Trustee to this standard, the heightened particularity requirements of Federal Rule of Civil Procedure 9(b) are inapplicable to fraudulent transfer claims. *Castillo v. Johnson*, 2019 WL 4222289, at *7 (D. Ariz. Sept. 5, 2019). As set forth in *Twombly* and *Iqbal*, cases cited in AH4R's memorandum,

> Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Twombly*, 550 U.S., at 555 [] but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," id., at 570 []. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 []. Two working principles underlie

> *Twombly*. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555 []. Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. Id., at 556 [].
>
> *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009)

Even if this Court ignores these authorities, Rule 9(b)'s requirements are to be relaxed where a bankruptcy trustee is the plaintiff particularly where "specific information is peculiarly within the adverse parties' knowledge" as is the case here. *Wolf*, 595 B.R. at 763.

Moreover, at the pleading stage, Trustee is not even required to distinguish its fraudulent transfer claims as between AUFTA 44-1004(A)(1) and (A)(2). *In re Don's Making Money, LLP*, 2007 WL 2784351, at *5 (Bankr. D. Ariz. Sept. 24, 2007). A complaint will not be dismissed as to a defendant even where no transfers are identified involving that specific defendant, whereas here, the Complaint indicates the list contains only those transfers discovered to date with further discovery remaining outstanding. *Id*. Dismissal is not proper where discovery has not been completed or even commenced as a factual record has yet to be established. *Id*. This is particularly true where Debtor and its other related entities have sought to thwart attempts at meaningful discovery. *Id*.

In any event, all Defendants, including AH4R, have been more than sufficiently notified of their alleged role in the transfers where the FAC lists the date, amount, and transfer specific to each (Compl. at ¶¶ 29, 70). *Castillo*, 2019 WL 4222289, at *8. To this end, count III of the FAC incorporates all 70 of the previous allegations into the claim (Compl. at ¶ 71). It identifies a list of 132 transfers to insiders totaling $3,452,791.46 all made by Debtor for purposes of defrauding its creditors. All the transfers were made after the commencement of Ware's wrongful death suit (Compl. at ¶¶ 26, 29). They began just over a year prior to RRR and Debtor's dissolution and

continued up until the filing of its cancelation (Compl. at ¶¶ 21, 29). As to sufficient value, the FAC alleges the purpose of the transactions were to defraud its creditor by diverting all its assets to insiders and related entities rather than for value in exchange for the transfer of an obligation (Compl. at ¶¶ 26, 54, 59, 65, 67, 73-75, 78, 87-89).

**VII. Count IV Sufficiently Sets Forth Facts Creating a Reasonable Inference Avoidance is Required Pursuant to AUFTA § 44-1005.**

Finally, as to Count IV, AH4R complains "Trustee fails to allege facts establishing that both the Debtor and RRR were insolvent at the time *each* transfer as made." Again, AH4R misstates Trustee's burden at this stage of the proceedings. Trustee need not *establish* the elements of fraudulent transfer under AUFTA § 44-1005 but is only required to plead sufficient facts to create a reasonable inference such that further discovery is warranted. *Autobacs Strauss, Inc.*, 473 B.R. at 552. The same is true of AH4R's allegations as to reasonably equivalent value. Moreover, as evidenced by the plain language of the statute, Debtor did not have to *be* insolvent, instead, the debtor can *become* insolvent as a result of the transfers. Ariz. Rev. Stat. Ann. § 44-1005.

Insolvency under AUFTA includes multiple definitions as follows:

> A. A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.
> B. A debtor who is generally not paying his debts as they become due is presumed to be insolvent.
> C. A partnership is insolvent under subsection A if the sum of the partnership's debts is greater than the aggregate, at a fair valuation, of all of the partnership's assets and the sum of the excess of the value of each general partner's nonpartnership assets over the partner's nonpartnership debts.
> D. Assets under this section do not include property that has been transferred, concealed or removed with intent to hinder, delay or defraud creditors or that has been transferred in a manner making the transfer voidable under this article.

> E. Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset.
> F. Debts under this section include the full amount of the debtor's potential liability under contracts of guarantee and surety. The assets of the debtor shall include a fair valuation of the rights of the debtor in connection with the contracts under indemnity or similar agreements and under equitable principles, including contribution and subrogation.

> Ariz. Rev. Stat. Ann. § 44-1002.

Trustee has pled sufficient facts to create a reasonable inference of constructive fraud pursuant to AUFTA §§ 44-1005. As set forth in the FAC, the series of transfers commencing in 2018 were not made for any reasonably equivalent value but constituted an orchestrated siphoning Debtor's assets by its insiders and related entities calculated to prevent the Ware estate and other creditors from collecting millions in debts including, primarily, the Ware Estate's judgment stemming from Debtor's complicity in Evoughn Ware's death (Compl. at ¶¶ 15, 18, 22, 25-26, 28-30). Immediately following commencement of proceedings against it, Debtor commenced a liquidation of its assets and by July 30, 2018 had liquidated the sole bank account titled in its name (Compl. at ¶ 25-26, 28). The funds were placed into an account titled in RRR's names which after several transactions to insiders also had a zero balance as of January 16, 2020 (Compl. at ¶ 29-30).

Home Opportunity and RRR were terminated as of December 31, 2019 (Compl. at ¶ 22). Given this data, there is without question facial plausibility exists of both insolvency and lack of reasonably equivalent value relative to the transactions warranting further discovery. *O'Brien*, 818 F.3d at 933; *Autobacs Strauss, Inc.*, 473 B.R. at 552.

**VIII. Conclusion.**

For the reasons set forth above AH4R's Motion seeking dismissal of Trustee's FAC must be denied. In the alternative, should American Homes 4 Rent TRS, LLC Motion be granted,

Trustee should be granted leave to file an amended complaint. *In re Checker Motors Corp.*, 463 B.R. 858, 868 (Bankr. W.D. Mich. 2012).

DATED this 6th day of January, 2023.

Respectfully submitted,
**MOYES SELLERS & HENDRICKS**
**BEERMANN LLP**

/s/ *Matthew D. Elster*
Special Counsel to the Trustee

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January, 2023, a copy of the attached document was filed via the court's CM/ECF system, which will send electronic notice to all counsel of record who have appeared in this case.

/s/ *Katie Abbitt*