1    Robert J. Miller (SBN: 013334)
     Khaled Tarazi (SBN: 032446)
2    BUCHALTER
     15279 North Scottsdale Road, Suite 400
3    Scottsdale, AZ 85254-2659
     Telephone: 480.383.1800
4    Fax: 480.824.9400
     Email: rmiller@buchalter.com
5            ktarazi@buchalter.com

6    *Attorneys for Defendants Window Rock Capital Partners, LLC,*
     *Window Rock Manager, LLC, Red Rock River, LLC,*
7    *WRRRF Consolidator, LLC, and Red Rock Landing, LLC*

8

              IN THE UNITED STATES BANKRUPTCY COURT

9

                IN AND FOR THE DISTRICT OF ARIZONA

10

| | |
|---|---|
| 11   In re: | Chapter 7 |
| 12   HOME OPPORTUNITY, LLC, | Case No. 2:21-bk-04924-EPB |
| 13          Debtor. | Adversary Case No. 2:22-ap-00200-EPB |
| 14 | **REPLY IN SUPPORT OF MOTION TO DISMISS** |
|   ROBERT A. MACKENZIE, THE CHAPTER 7 | |
| 15   TRUSTEE FOR THE BANKRUPTCY | |
|   ESTATE OF DEBTOR HOME | |
| 16   OPPORTUNITY, LLC, | |
| 17          Plaintiff, | |
| 18     v. | |
| 19   RED ROCK RIVER, LLC; WINDOW ROCK | |
|   CAPITAL PARTNERS, LLC; WRRRF | |
| 20   CONSOLIDATOR, LLC; RED ROCK | |
|   LANDING, LLC; WINDOW ROCK | |
| 21   MANAGER, LLC; and AMERICAN HOMES 4 | |
|   RENT TRS, LLC, | |
| 22 | |
| 23          Defendants. | |

24

25        Window Rock Capital Partners, LLC, Window Rock Manager, LLC, Red Rock River,

26   LLC, WRRRF Consolidator, LLC, and Red Rock Landing, LLC (collectively, the "Defendants")

hereby file this Reply in support of their *Motion to Dismiss* [ECF 20] ("Motion"),[1] and in response

to the objection [ECF 25] (the "Objection"), filed by Chapter 7 Trustee Robert A. MacKenzie.

## I.    PRELIMINARY STATEMENT.

The Trustee devotes a significant portion of the Objection (and the Complaint before it) telling his story of the case, which paints a very one-sided picture of events that led to a judgment against the Debtor in a Cook County, Illinois court.  The Defendants are not seeking to relitigate anything determined in that action and are not seeking any sympathy from this Court.  Indeed, the Defendants were not defendants in the Cook County action, so there have never been any findings of any wrongdoing by the Defendants related to anything that occurred in the Cook County action. At the appropriate time, if necessary, the Defendants will fully present their own side of the story.

But stories are not relevant here; what is relevant is whether the Trustee sufficiently pled facts in the Complaint that state a claim upon which relief can be granted.  The answer is he did not, and the Trustee cannot overcome pleading deficiencies by retelling his story of the case.

The Trustee asserts that the Defendants are holding him to the heightened particularity requirements of Rule 9(b).  [Objection, pp.2-3]  This misrepresents the Defendants' Motion, which makes no reference to Rule 9.  The Defendants merely seek to hold the Complaint to the minimum pleading standards of Rule 8, which requires that the party "plead in terms that are sufficient to provide the necessary notice to the opposing party or parties and to satisfy the plausibility standard imposed by the Supreme Court."  5 Fed. Prac. & Proc. Civ. § 1281 (4th ed.).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).

Rather than add any clarity to the convoluted nature of the Complaint, the Objection only compounds the confusion surrounding exactly what claims the Trustee is attempting to bring, and how and against whom he is attempting to bring them.  What <u>is</u> clear after reviewing the Complaint and the Objection is that the Trustee's claims are anything but straightforward (as the Trustee asserts), or simple, concise, and direct, as required by Rule 8.

---

[1]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

Case 2:22-ap-00200-EPB    Doc 36    Filed 01/27/23    Entered 01/27/23 14:22:20    Desc
BN 74691102v3                Main Document        Page 2 of 8

1   While it is difficult to parse through and make sense of the myriad contradictions and errors

2   in the Complaint and Objection, in this Reply the Defendants will distill the arguments to the

3   fundamental points needed to aid the Court in understanding the Complaint's major flaws.

4   **II.     ARGUMENT AND AUTHORITIES.**

5          **A.     The Trustee Fails To Plausibly Claim That The Debtor Made Any Transfers.**

6          It is undisputed that the threshold element of the AUFTA is that the subject transfer be

7   made by the debtor. A.R.S. §§ 44-1004 and 1005. It is also undisputed that the account ending in

8   x2888 belonged to RRR (the "RRR Account"). Thus, the transfers from the RRR Account in

9   Paragraph 29 of the Complaint are transfers made by RRR to the various other Defendants.

10         In the Objection, the Trustee claims that these transfers were actually made by the Debtor

11  based upon his alleged alter ego theory. He explains "that, while technically titled in RRR's name,

12  Debtor actually owned and controlled the funds in [the RRR Account] such that all transfers

13  therefrom were made by Debtor with its own assets." [Objection, p.5] See also, Objection, pp.12-

14  13 (all 132 transfers were "made by Debtor for purposes of defrauding its creditors.") But this

15  argument is completely contradictory to the operation of the very alter ego theory the Trustee is

16  asserting in Count I of the Complaint; namely, the theory that RRR is the *Debtor's* alter ego.

17         The first prong of a claim for alter ego under Delaware law requires the plaintiff to allege

18  facts sufficient to show that the *parent exercised exclusive domination and control of the*

19  *subsidiary* to the point that the subsidiary no longer has legal or independent significance of its

20  own. Wallace v. Wood, 752 A.2d 1175, 1183-84 (Del. Ch. 1999).[2] Indeed, in support of his alter

21  ego claim, the Trustee states that the Debtor "was owned and managed by RRR [Complaint, ¶ 20]

22  and "asks that liability attach to RRR for using Debtor as an instrumentality in the conduct of its

23  own business." [Objection, p.8]

24         The Trustee cannot credibly argue on the one hand that RRR exercised exclusive

25  domination and control of the Debtor and used it as RRR's instrumentality, while also arguing that

26  ---
    [2]     The second prong, discussed below, is that the corporate structure caused fraud or similar injustice. Id.

the Debtor owned and controlled all of the funds in the RRR Account. These conflicting positions are nonsensical. Thus, the Trustee has not plausibly alleged that the Debtor made any of the transfers identified in Paragraph 29 of the Complaint.

**B.     The Trustee Fails To Plausibly Claim That The Funds In RRR's Account Belonged To The Debtor.**

As detailed in the Motion, the Complaint is largely based on wholly conclusory allegations that fail to meet the Iqbal and Twombly plausibility standard. Perhaps the best example is the complete lack of supporting factual allegations for the Trustee's assertion that the funds in the RRR Account belonged to the Debtor in the first instance. The Trustee excuses this deficiency by claiming that "information to establish this claim is peculiarly in Debtor's possession and Defendants" and that he requires discovery. [Objection, p.11] This argument is disingenuous.

The Trustee has not only been in possession of the Debtor's books and records since June of 2021, he also subjected the Defendants (including RRR) and twelve other parties to multiple rounds of discovery in connection with these matters.[3] Yet with thousands of pages of documents produced, the Trustee does not allege a single instance of the Debtor's funds being deposited into the RRR Account (as compared with 132 transfers out of the RRR Account). The Trustee's allegations on this issue essentially boil down to "the funds belonged to the Debtor because I say they did." Such "[c]onclusory, *ipse dixit* assertions . . . do not satisfy the pleading standards as articulated in Twombly and Iqbal." McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 82 (S.D.N.Y. 2020) (quotations and citations omitted).

**C.     The Alter Ego Claim Fails As A Matter Of Delaware Law.**

The Trustee completely fails to address the Defendants' authorities regarding the nature of alter ego theory under Delaware law.[4] See In re Tronox Inc., 549 B.R. 21, 44 (S.D.N.Y 2016);

---

[3]     See proofs of service of discovery requests at Admin. ECFs 73 and 75; Orders granting 2004 examinations at Admin. ECF Nos. 129-140, including the Order granting the 2004 examination of RRR at ECF No. 131.

[4]     The Trustee acknowledges that Delaware law controls. [Objection, p.7]

BN 74691102v3

<u>Blair v. Infineon Techs. AG</u>, 720 F. Supp. 2d 462, 469 (D. Del. 2010).  These authorities make clear that Delaware views the alter ego doctrine as a means of establishing vicarious liability and <u>not</u> as a means of expanding a debtor's estate.

In the Objection, the Trustee acknowledges that he is seeking to establish <u>direct</u> liability through his alter ego claim—contrary to Delaware law—and then supports this theory by citing cases applying South Carolina and Illinois law.  [<u>See</u> Objection, p.6][5]  The Trustee has not disputed the Defendants' Delaware authorities on this issue and has cited no other controlling authority supporting his use of alter ego to expand the Debtor's estate.[6]

The Trustee contorts his facts and arguments to circumvent Delaware authority on the issue, resulting (again) in contradictory statements in the Objection.  In the same paragraph, the Trustee states both that: (i) he "does not seek to transmogrify assets of a non-debtor or treat them as co-extensive with debtor's assets;" and (ii) he "seeks only to have Debtor and RRR treated as the same entity" such that the transfers from RRR's bank account to the other Defendants constitute initial transfers.  [Objection, pp.7-8]  These statements cannot be reconciled.  The Trustee is attempting to substantively consolidate the Debtor and RRR through use of an alter ego claim.  Delaware law does not support such a cause of action.

But even if Delaware law allowed for the expansion of a debtor's estate to include the assets of an alter ego, the Complaint fails to allege facts sufficient to meet the alter ego standard under Delaware law.  The failure of the first prong is discussed above.  As to the second prong, Delaware courts require that "the corporation must be a sham and exist for no other purpose than

---

[5]  The Trustee incorrectly accuses the Defendants of improperly citing <u>In re Wardle</u>, 2006 WL 6811026, at *1 (B.A.P. 9th Cir. Jan. 31, 2006), because it is unpublished.  The Trustee cites Fed R. App. P. 32.1, which only prohibits courts from restricting citations to unpublished cases issued on or after January 1, 2007.  It does <u>not</u> preclude citations to prior unpublished BAP opinions.  Nothing in the Federal Rules of Appellate Procedure, the Ninth Circuit Rules of Appellate Procedure, or the Ninth Circuit BAP Rules precludes citing such BAP opinions for persuasive value.

[6]  Additionally, the Trustee's cited portions of <u>In re Hansen</u>, 341 B.R. 638, 643 (Bankr. N.D. Ill. 2006) and <u>In re Wolf</u>, 595 B.R. 735, 790 (Bankr. N.D. Ill. 2018) only stand for the proposition that alter egos <u>of transferees</u> may be found liable for the transfers, not that transfers made by the alter ego of a debtor may be avoided as initial transfers.

as a vehicle for fraud." <u>Wallace</u>, 752 A.2d at 1184;[7] <u>see</u> <u>also</u> <u>Crosse v. BCBSD, Inc.</u>, 836 A.2d 492, 497 (Del. 2003) ("To state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors."). The facts as alleged in the Complaint describing the Debtor's significant real estate operations belie the notion that the Debtor existed for no other purpose than as a vehicle for fraud. [Complaint, ¶¶ 24, 27]

### D. The Trustee Is Improperly Attempting To Rewrite Counts III And IV Through The Objection To Assert Theories Not Pled In The Complaint.

In the Objection, the Trustee asserts that Counts III and IV seek avoidance of the transfers against RRR as initial transferee and the remaining Defendants as subsequent transferees. [Objection, p.6] But this is not how Counts III and IV are pled in the Complaint, in which they are consistently written as though the Trustee is seeking to avoid all of the transfers as initial transfers (presumably based on his alter ego theory). The Trustee accuses the Defendants of "tellingly" failing to cite the portions of AUFTA § 44-1008 regarding the right to seek recovery from subsequent transferees. [Objection, p.6] Yet the Trustee not only fails to cite this portion of the statute anywhere in the Complaint, but nowhere in the Complaint does he make a distinction between any particular Defendant as an initial transferee or subsequent transferee.[8] The Trustee cannot remedy the deficiencies of Counts III and IV by rewriting them in the Objection or asserting that the Defendants should have guessed at the nature of the claims against them.

/ / /

---

[7] Delaware courts routinely cite this standard. <u>See</u> <u>e.g.</u>, <u>BuzzFeed, Inc. v. Anderson</u>, 2022 WL 15627216, at *12 (Del.Ch., 2022); <u>Altabef v. Neugarten</u>, 2021 WL 5919459, at *12 (Del.Ch., 2021) (dismissing alter ego claim where alleged sham entity had its own business operations); <u>DG BF, LLC v. Ray</u>, 2021 WL 776742, at *26 (Del.Ch., 2021) (same).

[8] The words "initial transferee" and "subsequent transferee" are wholly absent from the Complaint. In Count III, the Trustee frequently refers to "Defendants" collectively (which includes RRR), and in Count IV, the Trustee does not even use the word "Defendants," let alone make any distinction between any of them being initial transferees vs. subsequent transferees. This failure of distinguishing between RRR and the remaining Defendants is a problem throughout both the Complaint and Objection, leaving each Defendant having to guess as to which of them is the target of any particular claim or legal theory.

**E.    The Complaint Does Not Include Claims Pled In The Alternative.**

The Trustee tries to explain away inconsistencies in the Complaint by claiming that he pled claims in the alternative.  [Objection at 13]  This argument also fails.  Although a party may allege alternative claims, Rule 8(d) "has its limits."  <u>Total Coverage, Inc. v. Cendant Settlement Servs. Group, Inc.</u>, 252 F. App'x 123, 126 (9th Cir. 2007).  If a claim is internally inconsistent, the inconsistencies may cancel each other out and render the claim subject to dismissal for failure to state a claim.  <u>See</u>, <u>e.g.</u>, <u>Maloney v. Scottsdale Ins. Co.</u>, 256 F. App'x 29, 31-32 (9th Cir. 2007).  While Rule 8 gives the pleader some leeway, "no authority is known . . . which permits blowing hot and cold in the same cause of action."  <u>Steiner v. Twentieth Century-Fox Film Corp.</u>, 140 F. Supp. 906, 908 (S.D. Cal. 1953).

As detailed in just the above examples, the Complaint and Objection are riddled with internal contradictions that make it difficult, if not impossible to discern exactly what claims the Trustee is asserting against any given Defendant.  The Trustee's attempt to couch these inconsistencies as alternative pleading is another improper attempt by the Trustee to rewrite the Complaint in the Objection that this Court should disregard.

**F.    Statutory Authority Requires Dismissal Of Claims Against WRRRF.**

Finally, the Trustee's citation to <u>In re Sw. Supermarkets, LLC</u>, 325 B.R. 417 (Bankr. D. Ariz. 2005) for the proposition that WRRRF may be sued despite the filing of its certificate of cancellation is misguided.  <u>Supermarkets</u> involved limited partnerships, not LLCs as is the case here.  The <u>Supermarkets</u> court does not cite to any statutory authority or case law.

Numerous cases have interpreted 6 Del. C. § 18-803 to mean that a cancelled LLC cannot be sued.  <u>See</u> <u>In re Boston Generating, LLC</u>, 617 B.R. 442, 495 (Bankr. S.D.N.Y. 2020) ("[u]nder Delaware LLC law, a Delaware LLC that has been issued its certificate of cancellation from the Secretary of State cannot be sued"); <u>Soroof Trading Development Co., Ltd. v. GE Fuel Cell Systems, LLC</u>, 842 F.Supp.2d 502, 520 (S.D.N.Y., 2012); <u>Anthony Wayne Corp. v. Elco Fastening Sys., LLC</u>, 2016 WL 687887, at *2 (N.D.Ind., 2016); <u>Decker v. Statoil USA Onshore Properties,</u>

BN 74691102v3

Inc., 2015 WL 6159483, at *1 (N.D.W.Va., 2015).  The claims against WRRRF must be dismissed.

## III.     CONCLUSION.

For the reasons set forth herein and in the Motion, the Defendants respectfully request the Court enter an Order dismissing the Complaint and granting such further relief as is appropriate.

DATED:  January 27, 2022

BUCHALTER, PC

By:    _/s/Khaled Tarazi  (SBN 032446)_
Robert J. Miller
Khaled Tarazi
_Attorneys for Defendants_

**E-FILED** on January 27, 2022, with
the U.S. Bankruptcy Court and copies served
via ECF notice on all parties that have appeared
in the case.

**COPY** emailed or sent via U.S. Mail this same
date to:

Keith L. Hendricks, Esq.
MOYES SELLERS & HENDRICKS
1850 North Central Avenue, #1100
Phoenix, AZ  85004
khendricks@law-msh.com

Matthew D. Elster, Esq.
BEERMANN LLP
161 North Clark Street #3000
Chicago, IL  60601
mdelster@beermannlaw.com
_Attorneys for Plaintiff_

Steven D. Jerome, Esq.
Snell & Wilmer
One East Washington Street, #2700
Phoenix, AZ  85004
sjerome@swlaw.com
_Attorneys for Defendant American Homes 4 Rent TRS, LLC_

_s/Cristina Daniels_